[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 193.]

SALEM MEDICAL ARTS AND DEVELOPMENT CORPORATION, APPELLANT, *v.*

COLUMBIANA COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision,*

**1998-Ohio-248.**]

*Taxation—Real property—Valuation of office building and adjacent parcels of*
*land leased to healthcare professionals—Board of Tax Appeals' decision*
*as to property's value affirmed when owner fails to meet its burden of*
*proving a right to a reduction in value—Board's denial of motion for*
*sanctions reversed and remanded, when—Civ.R. 37(C), construed.*

(No. 97-1112—Submitted March 24, 1998—Decided June 24, 1998.)

APPEAL from the Board of Tax Appeals, No. 95-S-839.

_____

**{¶ 1}** Appellant, Salem Medical Arts & Development Corporation
("Salem"), owned the subject property, an office building and adjacent parcels of
land, and leased offices to healthcare professionals. In early 1993, Salem
Community Hospital and four leaseholders in the subject property owned all sixty
shares of stock in Salem. Later in 1993, the hospital purchased all outstanding
shares of stock for $3,000 per share.

**{¶ 2}** Salem filed a complaint with the Columbiana County Board of
Revision ("BOR") to reduce the value of the land and office building for tax year
1994 from $1,026,150 to $673,000. In addition, Salem sought a reduction in value
of one of the adjacent parcels to account for a demolished building. The BOR
reduced the value to $1,005,440, which allowed only for the demolished building.
Salem appealed this decision to the Board of Tax Appeals ("BTA").

**{¶ 3}** Before the BTA, Salem presented evidence regarding the stock
transfer and other aspects of the corporation's finances to establish the property's

value. Salem arrived at its value of $681,150 by adding $449,429 in liabilities assumed, $62,462 in deferred income taxes, the stock value of $180,000 (sixty shares at $3,000 per share), and subtracting $10,741 in cash and rent receivable. As an alternative, Salem proposed a value of $618,688, which did not include the deferred taxes. Salem also attempted to discredit the county auditor's efforts in valuing the property by challenging the work of the auditor, her employees, and contracted consultants. Because Salem failed to demonstrate its entitlement to a reduction in value, the BTA ratified the BOR's determination.

{¶ 4} This cause is now before this court upon an appeal as of right.

––––––––––––––––––

*Robert L. Guehl,* for appellant.

*Robert L. Herron,* Columbiana County Prosecuting Attorney, and *Andrew A. Beech,* Assistant Prosecuting Attorney, for appellees.

––––––––––––––––––

**COOK, J.**

{¶ 5} Because Salem failed to meet its burden of proving a right to a reduction in value, we affirm the BTA's decision as to the property's value. However, we reverse the BTA as to Salem's motion for sanctions and remand to the BTA to rule on that motion in accordance with this opinion.

{¶ 6} In its first proposition of law, Salem argues that the hospital's purchase of Salem stock was an arm's-length transaction. And, because the property was Salem's only asset, the purchase of all of Salem's stock was the functional equivalent of a purchase on the open market of the real estate itself, thus establishing the property's value. The BOR responds that the stock's purchase price does not automatically establish the value of the real estate. Instead, determining the property's value, under the circumstances, requires appraisal testimony and other supporting evidence.

{¶ 7} The BTA determined, on several bases, that the stock transfer did not

establish the property's value. However, we analyze only one basis, as it independently supports our decision. The evidence presented by Salem regarding the sale of the *stock* did not establish the value of the *real property.*

{¶ 8} Before the BTA, the only witness Salem offered to establish the property's value was Michael Giangardella, Salem's secretary-treasurer and the hospital's chief financial officer. Giangardella testified that in 1992 or 1993, the property had been listed on the market for three years with an asking price of $800,000, but he was unable to document a listing agreement or provide a real estate agent's name. He testified about a 1989 appraisal, but offered no appraisal testimony for tax year 1994. This testimony did not establish a value for the property.

{¶ 9} Giangardella also testified at length about the hospital's purchase of all the outstanding shares of Salem's stock. According to Salem, this testimony established the stock's value, which it asserts is also the real property's value. We do not agree.

{¶ 10} Valuing property based on a company's stock price fails to account for the complexities of corporate finance. "Stock represents ownership not just of the assets in question, but the ownership of a going concern. Consequently, its value is subject to liabilities, market conditions, and all of the other factors which contribute to or detract from the value of a company." *Smith Cookie Co. v. Oregon Dept. of Revenue* (1979), 8 Ore. Tax 10, 17.

{¶ 11} Stock value represents the *company's* value. The many variables associated with a going concern combine to make up a company's value. The sale price of all of the shares of stock of a company, therefore, does not establish the value of that company's real property. Other evidence, such as appraisal or expert accounting testimony, would be necessary to prove the value of the real property separate from the value of the company itself. Because Salem did not establish a value for the property, it did not prove that it was entitled to a reduction in value.

{¶ 12} In its second proposition of law, Salem argues that the BTA erred in finding that the BOR's value was reasonable and reflected the value as of the tax lien date. In support, Salem argues that the method the county auditor used to value the property was flawed and that the BOR and BTA acted unreasonably by adopting the auditor's valuation. In the absence of probative evidence of a lower value, however, the BOR and the BTA are justified in fixing the value at the amount assessed by the county auditor. *Snavely v. Erie Cty. Bd. of Revision* (1997), 78 Ohio St.3d 500, 503, 678 N.E.2d 1373, 1376; *Westlake Med. Investors L.P. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 547, 549, 660 N.E.2d 467, 468.

{¶ 13} With its third proposition of law, Salem questions the BTA's reliance on the deputy county auditor's testimony, asserting that he was not an expert and thus was not entitled to give an opinion on the property's value. The BOR responds that the deputy auditor, Michael R. Smith, did not testify as an expert, but rather testified about personal knowledge gained in his role as deputy auditor. The record confirms that the BTA relied on Smith's testimony only as to the description and inspection of the property. Because Smith offered no opinion of value, the proposition is overruled.

{¶ 14} In its fourth proposition of law, Salem argues that the BTA should have awarded expenses and attorney fees to Salem as a sanction for the BOR's acting in bad faith in denying Salem's requests for admissions. The BOR replies that the BTA acted reasonably and lawfully in overruling the motion.

{¶ 15} A party may deny a request for admissions, but, upon motion pursuant to Civ.R. 37(C), improper denials may subject the responding party to sanctions. Whether such denials are subject to Civ.R. 37(C) sanctions depends upon whether the proof at trial contradicts the denial. If the matters denied are proved at trial, then a court shall award sanctions "[u]nless the request had been held objectionable under Rule 36(A) or the court finds that there was good reason

for the failure to admit or that the admission sought was of no substantial importance* * *." Civ.R. 37(C). See *Itskin v. Restaurant Food Supply Co.* (1982), 7 Ohio App.3d 127, 7 OBR 161, 454 N.E.2d 583. The party denying a later-proved matter has the burden of proving one of these defenses.

{¶ 16} In response to Salem's position that it proved at the hearing facts denied by the BOR, the BOR's counsel justified the denials on the basis that Salem requested admission of matters presenting a "genuine issue for trial." Civ.R. 36(A). Civ.R. 36(A) specifically forecloses objection to a request for admissions on that basis. Likewise, a denial of a requested admission on that basis is not insulated from the imposition of sanctions pursuant to Civ.R. 37(C) if the matter denied is proved at trial. The party denying on such basis runs no risk of sanctions, however, if the matter is genuinely "in issue," since Civ.R. 37(C) precludes sanctions when there is "good reason" for the failure to admit. Advisory Committee Note to 1970 Amendments to Fed.R.Civ.P. 36(a), printed in 48 F.R.D. 532.

{¶ 17} Here the BTA ruled that "counsel for the appellees properly denied appellants' requests because he justifiably believed that all of said requests relate to a genuine issue for trial, i.e. the true value of the subject property." Because requests for admissions narrow issues and facilitate proof at trial, review of denials ought to be meaningful. In order to be meaningful, the tribunal implementing the sanction review under Civ.R. 37(C) must objectively evaluate whether "good reason" existed for each denial. That a matter "related to" a genuine issue for trial should not suffice; only those matters actually determined to be "in issue" meet the standard of "good reason" to deny.

{¶ 18} Thus, we remand the case for further consideration of the sanction motion. The BTA will need to review the requests for admissions in light of what Salem eventually proved. If Salem proved matters denied by the BOR, the BTA will then need to consider whether each matter denied was genuinely in issue, using an objective standard of reasonableness. Civ.R. 37(C).

**{¶ 19}** No motion to compel need be filed as a prerequisite to moving for sanctions pursuant to Civ.R. 37(C). The BTA erred in determining that Salem's motion was inappropriate because Salem never filed a motion to compel more complete answers to the requests for admissions. The BTA cited Ohio Adm.Code 5717-1-14 and stated that it could award sanctions only where a motion to compel had been filed. We disagree.

**{¶ 20}** Discovery in matters before the BTA is governed by the Rules of Civil Procedure except where the rules conflict with administrative regulations. Ohio Adm.Code 5717-1-11(A). The administrative rule cited by the BTA is inapposite to procedures to be followed for requests for admissions. Civ.R. 37(C) delimits the procedure for obtaining sanctions, and a motion to compel is not a required step in the procedure.

**{¶ 21}** We recognize that a motion to compel and a violation of that order may be necessary before sanctions can be awarded for certain discovery violations. See *Brannon v. Troutman* (1992), 75 Ohio App.3d 233, 240, 598 N.E.2d 1333, 1337; but see *Cunningham v. Garruto* (1995), 101 Ohio App.3d 656, 656 N.E.2d 392 (motion to compel and violation thereof not necessary for Civ.R. 37[D] sanctions). Requests for admissions, however, are distinguishable from other discovery requests. "In reality, [a request for admissions] is not a discovery procedure but is a procedure used to narrow the issues and to eliminate unnecessary proof at trial by obtaining the admission of facts known to the party requesting the admissions and concerning that upon which there should be no issue." McCormac, Ohio Civil Rules Practice (2 Ed.1992) 287, Section 10.56. Civ.R. 37(C) sanctions are in effect reimbursement for the expense incurred in forcing issues to be tried that should have been resolved before trial.

**{¶ 22}** Accordingly, we reverse the BTA's decision as to Salem's motion for sanctions and remand to allow the BTA to consider the motion in a manner consistent with this opinion. We affirm the BTA's decision as to Salem's other

propositions of law.

*Decision reversed in part,*
*affirmed in part*
*and cause remanded.*

MOYER, C.J., RESNICK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur in part and dissent in part because they would affirm the decision of the Board of Tax Appeals in its entirety.

———————————