[Cite as *Tanio v. Ultimate Wash*, 2013-Ohio-939.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98826**

## SONIA TANIO

PLAINTIFF-APPELLANT

vs.

## ULTIMATE WASH, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-744491

**BEFORE:**    Blackmon, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**        March 14, 2013

**ATTORNEYS FOR APPELLANT**

Joseph R. Compoli
612 East 185th Street
Cleveland, OH 44119

James R. Goodluck
3517 St. Albans Road
Cleveland Heights, OH 44121

**ATTORNEYS FOR APPELLEES**

Todd M. Haemmerle
Colleen A. Mountcastle
Gallagher Sharp
6th Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Sonia Tanio ("Tanio") appeals the trial court's granting of summary judgment in favor of appellee Ultimate Wash of Maple Heights ("Ultimate").[1] She assigns the following two errors for our review:

**I. The trial court erred in granting plaintiff-appellant's motion for summary judgment.**

**II. The trial court erred in failing to grant plaintiff's motion for award of reasonable attorneys fees and expenses under Rule 37.**

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

### Facts

**{¶3}** On the afternoon of January 5, 2009, Tanio took her car to Ultimate, a free-standing car wash located in Maple Heights, Ohio. The car wash contains both full-serve and self-serve bays. Tanio chose to use a self-serve bay. The self-serve bays have a roof but are open at both ends. When Tanio walked to the rear of her car she slipped and fell on a small patch of black ice, fracturing her knee. She claimed to not have seen the ice until she fell. A sign is posted in each bay warning, "Bay may be slippery when wet."

**{¶4}** Tanio filed a complaint against Ultimate. She was unaware at the time of the accident that Ultimate had a floor-heat system to prevent the accumulation of ice.

---

[1]Tanio had also sued "Ultimate Wash of Solon" and "Ultimate Wash" but voluntarily dismissed the parties from the suit.

However, in her complaint she contended that Ultimate was negligent in maintaining its car wash because the icy patch indicated either the floor-heat system was not on or was not operating appropriately.[2]

{¶5} The parties filed cross motions for summary judgment. Tanio emphasized the transparent nature of the black ice and the fact the floor-heat system failed to dissolve the ice. Ultimate argued that Tanio's claim was prevented by the open and obvious doctrine because the inherent risk of using a car wash during subfreezing weather is open and obvious. It argued that Tanio should have expected the icy conditions because the temperature was below freezing. Ultimate also argued that it was under no duty to provide the floor-heat system and that because Tanio had not known about the heat system prior to her fall, she did not rely on the system in choosing to wash her car. Ultimate also argued there was no evidence that the system was not working on the day in question.

{¶6} The trial court granted summary judgment in Ultimate's favor, concluding in pertinent part that "the risk of ice forming while using a car wash in subfreezing temperatures is so open and obvious that no duty attaches to the land owner absent evidence that the owner has somehow aggravated the inherent risk." As to Tanio's contention that the floor heating system was not activated or not working properly, the

---

[2]The floor-heat system is comprised of a boiler that heats a water/Glycol mix, which is circulated through tubing located beneath the floor surface to prevent ice from forming on the ground. When the air reaches below 45 degrees Fahrenheit, the boiler automatically fires up and circulates the mix through the tubing.

court held, "plaintiff has not demonstrated any reliance on the use of a floor-heated system or that it induced her to patronize this car wash, nor has plaintiff cited any statutory or other authority requiring an open bay car wash to have a floor-heat system."

**{¶7}** Tanio filed a motion for relief from judgment and a notice of appeal on August 17, 2012. This court remanded the matter to allow the trial court to rule on the motion for relief from judgment. After the motion was denied, the matter proceeded to this appeal.

## Motion for Summary Judgment

**{¶8}** Tanio argues the trial court erred by entering summary judgment in Ultimate's favor because there was an issue of fact whether the transparent black ice was open and obvious, and whether the floor-heat system was working or not because of the accumulation of ice.

**{¶9}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987), *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving

party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. We conclude the trial court did not err by granting summary judgment in Ultimate's favor.

{¶10}      A common-law negligence claim requires a showing of (1) a duty owed; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22. The issue in the instant case is whether Ultimate breached its duty to Tanio. A determination of whether a duty exists is a question of law for the court to decide, and therefore, is a suitable basis for summary judgment. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶11}  Under Ohio law, a landowner owes no duty to warn patrons of open and obvious conditions. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Id*. at ¶ 5, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 1992-Ohio-42, 597 N.E.2d 504.

{¶12}  In most situations, whether a danger is open and obvious presents a question of law. *Nelson v. Sound Health Alternatives Internatl., Inc*., 4th Dist. No. 01CA24, 2001-Ohio-2571; *Hallowell v. Athens*, 4th Dist. No. 03CA29, 2004- Ohio-4257, ¶ 21. However, under certain circumstances, disputed facts may exist regarding the

openness and obviousness of a danger, thus, rendering it a question of fact. Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law. *Klauss v. Marc Glassman, Inc.,* 8th Dist. No. 84799, 2005-Ohio- 1306, ¶ 18. We conclude that based on the facts the court did not err by finding the hazard to be open and obvious.

{¶13} Tanio contends the trial court erred by concluding that the icy patch was an open and obvious hazard; she argues that because the ice was black ice and transparent, she was unable to see it. We disagree. The inherent open and obvious risk was not Tanio's ability to see the ice, but that the use of water in cold temperatures causes ice to form. Thus, it is irrelevant whether Tanio could actually see the ice. Common sense should have alerted Tanio to the fact that the use of water during subfreezing weather creates a risk that the ground will be slippery. Although Tanio contends that there was no evidence of the temperature that day, Tanio's own expert, Thomas Schmidlin, a certified meteorologist, stated in his report that the temperature range that day was between 20 and 36 degrees Fahrenheit. Specifically, at the time that Tanio was at the car wash, the weather report indicated it was between 30 and 31 degrees, which is below the 32 degree freezing point.

{¶14} Ohio case law has established that the use of a self-serve car wash in subfreezing temperatures presents a danger of ice accumulation that is so open and obvious that no duty attaches to the land owner, absent evidence that the owner has somehow aggravated the inherent risk in that activity. *See Workman v. W&W Dev.*

*Corp.*, 5th Dist. No. 2010-CA-0138, 2011-Ohio-2305; *Couture v. Oak Hill Rentals, Ltd.*, 6th Dist. No. OT-03-048, 2004-Ohio-5237; *Bevins v. Arledge*, 4th Dist. No. 03CA19, 2003-Ohio-7297. Tanio attempts to distinguish the above cases based on the fact that there was a recent snow in some of the cases, the plaintiff saw the ice, or that the plaintiff fell in a different area of the car wash. However, these facts do not alter the court's pronouncement that the use of water in subfreezing temperatures creates an open and obvious risk.

{¶15} Tanio argues that the fact the floor-heat system was not on or not working was an attendant circumstance that aggravated the inherent risk; however, there was no evidence that the floor-heat system was not on or not working. Even Tanio's experts admitted that the floor-heat system does not completely eliminate the risk of icy or slippery conditions from forming. Plaintiff's expert Michael George ("George") never visited or inspected the car wash. He based his opinion on information related to him by Tanio's counsel. Counsel had told George that ice engulfed the entire bay, which was not the conditions as testified to by Tanio. George admitted that the fact that there was just an icy patch in the bay area altered his conclusion regarding the working condition of the heat system. He acknowledged that ice and snow could have fallen off other vehicles, and that if the ice had not been there long, the system may not have had time to melt it. Plaintiff's expert John Telesz also conceded that there were certain conditions where there would be ice even though the floor-heat system was working, such as when other vehicles drop ice and snow in the bay.

**{¶16}** Moreover, even if the system was not working, Tanio has failed to show that she visited the car wash because it had a floor-heat system to prevent ice from forming. Thus, there is no evidence that she was relying on the system in deciding to wash her car. Nor is there a requirement that car washes have the floor-heat system; therefore, if the system was not on or not working would not impute liability to Ultimate because it had no duty to provide an ice melting system. Tanio cites to the Section 107.1 of the Ohio Fire Code ("OFC") in support of its argument that car washes are to maintain floor-heat systems. However, the OFC does not reference either car washes or floor-heating systems. It states:

> **Whenever or wherever any device, equipment, system, condition, arrangement, level of protection, or any other feature is required for compliance with the provisions of this code, or otherwise installed, such device, equipment, system, condition, arrangement, level of protection or other feature *shall be thereafter continuously maintained in accordance with this code and applicable referenced standards.* (Emphasis added.)**

**{¶17}** Because this section appears in the fire code, its logical purpose is for the owners of equipment to maintain their equipment to prevent fires. Tanio fails to relate this section to another area of the code that would require floor-heat systems in car washes.

**{¶18}** Finally, merely because Ultimate had a floor-heat system, should not impose a greater duty on it than car washes that do not own floor-heating systems. As the court in *Bevins*, 4th Dist. No. 03CA19, 2003-Ohio-7297, held "simply because appellee's attempts to keep the premises absolutely free from icy patches failed to prevent

an injury does not mean that he had a duty to do more where the risk associated with using the car wash in subfreezing temperatures amounted to an open and obvious condition." Ultimate did not impart to customers a false sense of security by actively advertising or posting signs to the effect that its car wash was guaranteed to be non-slippery due to its heating system. Therefore, Tanio should have expected that icy patches could exist due to the cold weather.

{¶19} Lastly, Tanio argues that the car wash's boiler was not certified or inspected pursuant to R.C. 4104.20. However, Tanio has failed to establish that the lack of certification had any causal connection to her accident. As we stated, Ultimate had no duty to provide the floor-heat system. Also, the purpose of the certification is to ensure that the boiler does not present any explosive danger, not to assure that the boiler was adequately heating the liquid in the floor-heat system. Pursuant to R.C. 4104.15, the purpose of the certification is to ensure that the fittings are properly connected to prevent explosions. There was also no indication that the boiler was not working. In fact, Tanio's experts, testified that it was possible to have a boiler not pass certification, but still be able to heat the water/Glycol mix.

{¶20} We conclude the trial court did not err by granting summary judgment in Tanio's favor. The slippery condition on the floor of an open-air car wash bay during subfreezing weather is inherently open and obvious. There is no evidence that a floor-heat system was required and no evidence that the system was not working at the time of the accident. Accordingly, Tanio's first assigned error is overruled.

## Attorney Fees

{¶21} In her second assigned error, Tanio argues that the trial court erred by failing to award her attorney fees based on Ultimate's "false, deceptive, and evasive" answer to Interrogatory Eight.[3]

{¶22} Interrogatory Eight requested Ultimate to admit that the boiler was not properly inspected or certified on the day of the accident.

{¶23} Ultimate responded:

**This request is irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, Defendant maintains only the most recent boiler inspection certificates. Defendant neither admits or denies the balance of request for admission number 8 regarding inspections of certifications prior to January 5, 2009.**

---

[3]The trial court did not rule on the motion. However, if a motion is not expressly decided by the trial court when the case has concluded, the motion is presumed to have been denied. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13.

**{¶24}** Tanio contends this answer is false, deceptive, and evasive because it neither denies the request nor provides in detail the reasons why Ultimate could not admit or deny. As a result, she claims that she is entitled to attorney fees pursuant to Civ.R. 37(C).

**{¶25}** The decision to impose sanctions pursuant to Civ.R. 37 is within the discretion of the trial court; thus, we will not reverse the trial court's decision absent an abuse of discretion. *Maurer v. Boyd*, 9th Dist. No. 23818, 2008-Ohio- 1384, ¶ 5, citing *Millis Transfer, Inc. v. Z & Z Distrib. Co.*, 76 Ohio App.3d 628, 602 N.E.2d 766 (6th Dist.1991). Civ.R. 37(C) provides:

> **If a party, after being served with a request for admission under Rule 36, fails to admit the genuineness of any documents or the truth of any matter as requested, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. Unless the request had been held objectionable under Rule 36(A) or the court finds that there was good reason for the failure to admit or that the admission sought was of no substantial importance, the order shall be made.**

**{¶26}** Therefore, where a party has denied a request for admission, but the proof at trial contradicts the denial, the court must award sanctions upon a Civ.R. 37 motion

"unless the request had been held objectionable under Civ.R. 36(A) or the court finds that there was good reason for the failure to admit or that the admission sought was of no substantial importance * * *." *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193, 195-196, 1998- Ohio-248, 694 N.E.2d 1324.

**{¶27}** We conclude given our discussion in the previous error that the information regarding the boiler was irrelevant because the fact that the boiler was not certified has no causal connection to Tanio's accident. Ultimate was not required to have a floor-heat system and Tanio's experts testified that it was possible for a boiler to work without being certified. Accordingly, the trial court did not abuse its discretion by denying the motion for attorney fees. Tanio's second assigned error is overruled.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR