[Cite as *Orange City Schools Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 2019-Ohio-634.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107199**

**ORANGE CITY SCHOOLS
BOARD OF EDUCATION, ET AL.**

APPELLEES

vs.

**CUYAHOGA COUNTY
BOARD OF REVISION, ET AL.**

APPELLEES

[Appeal by 30050 Chagrin Boulevard, L.L.C., Appellant]

**JUDGMENT:**
AFFIRMED

Administrative Appeal from the
Ohio Board of Tax Appeals
Case No. 2017-127

**BEFORE:** E.T. Gallagher, J., Kilbane, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEYS FOR APPELLANT**

Robert K. Danzinger
Todd W. Sleggs
Sleggs, Danzinger & Gill, Co., L.P.A.
820 West Superior Avenue, 7th Floor
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**FOR ORANGE CITY SCHOOL DISTRICT BOARD OF EDUCATION**

John P. Desimone
Kevin M. Hinkel
Kadish, Hinkel & Weibel
1360 East 9th Street, Suite 400
Cleveland, Ohio 44114

**FOR APPELLEE CUYAHOGA COUNTY BOARD OF REVISION & CUYAHOGA COUNTY FISCAL OFFICER**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Reno J. Oradini
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**FOR APPELLEE OHIO TAX COMMISSIONER**

Dave Yost
Ohio Attorney General

BY:    Christine T. Mesirow
Assistant Attorney General
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, 30050 Chagrin Boulevard L.L.C. ("Appellant"), appeals a decision of the Ohio Board of Tax Appeals ("BTA") and claims the follow four errors:

1. The Board of Tax Appeals' decision and order ignores Ohio Supreme Court precedent holding that the sale of stock and that the sale of a partnership interest is the sale of personal property. As a result, the Board's decision and order is unreasonable and unlawful.

2. The Board of Tax Appeals' decision and order using the sale of personal property to value the real estate is unreasonable and unlawful.

3. The Board of Tax Appeals' decision and order, based on evidence in the record, is taxing non-real estate items as real estate, and is therefore unreasonable and unlawful.

4. The Board of Tax Appeals erred in not requiring appraisal evidence in the absence of a sale of the real estate, and as a result, its decision and order is unreasonable and unlawful.

{¶2} We find no merit to the appeal and affirm the BTA's decision.

## I. Facts and Procedural History

{¶3} This appeal concerns the valuation of real property located at 30500 and 30100 Chagrin Boulevard, Pepper Pike, Ohio ("the property") for ad valorem tax purposes. The property, commonly known as Corporate Circles, has been identified by the Cuyahoga County Fiscal Officer as permanent parcel numbers 872-36-001, 372-36-002, and 372-36-003. It consists of two, three-story office buildings composed of 124,422 square feet of rentable space. The property is also comprised of an underground parking garage known as "Building 3," which is situated under the office buildings and provides 33,716 square feet of parking space.

{¶4} The Cuyahoga County Fiscal Officer valued the property at $11,529,900 for the 2015 tax year. In March 2016, appellee, the Orange City School District Board of Education ("the BOE"), filed a complaint with the Cuyahoga County Board of Revision requesting an

increase in value of the property to $16,000,000, based on a sale of the property in February 2015. The Board of Revision held a hearing on the complaint in January 2017. Although no witnesses were called by either party, the BOE presented several documents in support of its claim, including (1) a purchase and sale agreement and limited warranty deed demonstrating the recent transfer of the property, (3) a certificate of merger, and (2) an affidavit from Joseph Greenberg, a managing member of the ownership entity, averring that on February 9, 2015, the property transferred from LSREF OREO 2, L.L.C. ("LSREF OREO 2") to LSREF2 OREO 2 SUB, L.L.C. ("OREO 2 SUB"), which simultaneously merged into Appellant and thereafter ceased to exist.

{¶5} The BOE also submitted (1) an appraisal of the property prepared by Crown Appraisal Group in conjunction with the recent sale that valued the property at $16,900,000 in December 2014, (2) a closing statement from the sale showing a sale price of $16,000,000, and (3) a stipulation filed with the BTA for the 2014 tax year in which the parties to this case agreed that the property was worth $16,000,000. Appellant did not object to any of the documents introduced by the BOE. Instead, Appellant argued the sale was of membership interests in a limited liability company and therefore could not be used to value property for purposes of ad valorem taxation.

{¶6} The Board of Revision denied the BOE's request to increase the valuation of the property. In its Journal Summary, the Board of Revision stated:

> The complainant appeared through counsel and provided documentary evidence of an alleged sale of the subject [property] that occurred in 2015. The complainant supplied a deed, closing statement and a purchase agreement, amongst other things. The Board reviewed the complainant submission and find [sic] that the true consideration cannot be ascertained by the documents provided. No consideration was shown on the deed, and the purchase agreement indicates consideration/interest for non realty items. The Board reviewed the

complainant's submission and find [sic] the complainant has not met their [sic] burden of proof; no revision.

The Board of Revision did not comment on the appraisal report, the parties' stipulation, or the closing statement that showed the sale price.

{¶7} The BOE appealed to the Ohio Board of Tax Appeals ("BTA"), and the BTA held a de novo evidentiary hearing. The sole witness was Joseph Greenberg, who authenticated the documents the BOE had previously presented to the Cuyahoga County Board of Revision, including the limited warranty deed, the purchase and sale agreement, his affidavit regarding the merger of OREO 2 SUB into Appellant and other documents.

{¶8} Greenberg testified that the property was not for sale on the open market when he sought to purchase it. He contacted the prior owner about buying the property because it held leases to several "high quality credit tenants," including four well-known banks. (BTA tr. 31-32.) The prior owner offered to sell the property for the non-negotiable price of $16 million, and Appellant accepted. (BTA tr. 34-35.)

{¶9} Appellant argued it paid $16,000,000 not to buy the property but to purchase the membership interest in LSREF OREO 2. Greenberg also testified that Appellant paid $16,000,000, not for the property, but for the leases of high quality tenants and the name Corporate Circles. (BTA tr. 35.) Greenberg admitted, however, that Appellant never obtained an appraisal for the value of the name "Corporate Circles." (BTA tr. 22.)

{¶10} The limited warranty deed, filed in the Cuyahoga County Fiscal Office, indicates that LSREF OREO 2 transferred the property to OREO 2 SUB on February 9, 2015. The fiscal officer's stamp, made on February 9, 2015, at 10:03 a.m., indicates that no consideration was paid for the property.

**{¶11}** Greenberg stated in his affidavit that, on February 9, 2015, the property was titled to OREO 2 SUB, a Delaware limited liability company. On that same date, OREO 2 SUB merged with Appellant, and OREO 2 SUB ceased to exist. (BTA tr. 15.) Greenberg attached a copy of the certificate of merger to his affidavit that was filed with the Delaware Secretary of State on February 9, 2015, at 9:16 a.m., at which time OREO 2 SUB merged with Appellant and ceased to exist. Thus, the BOE argued, at the time the limited warranty deed was recorded in the Cuyahoga County Fiscal Office at 10:03 a.m., the grantee, OREO 2 SUB, had already merged with Appellant and ceased to exist. Therefore, the BOE argued, the property effectively transferred directly to Appellant.

**{¶12}** Greenberg testified that he was the managing member of W & M Holdings Chagrin L.L.C. ("W & M Holdings"), which is a member of Appellant. (BTA tr. 11.) W & M Holdings entered into a purchase and sale agreement with LSREF OREO 2, whereby LSREF OREO 2 agreed to sell 100 percent of its interest to W & M Holdings for a purchase price of $16,000,000. The sale and purchase agreement further provided that, on and before February 9, 2015, LSREF OREO 2, owned 100 percent of the membership interest in OREO 2 SUB. However, on February 9, 2015, LSREF OREO 2 transferred and assigned all of its ownership interest in OREO 2 SUB to Appellant.

**{¶13}** Greenberg testified that Appellant was created pursuant to the terms of the sale and purchase agreement for the sole purpose of acquiring the seller's interests in OREO 2 SUB. (BTA tr. 26.) Appellant was assigned W & M Holdings's interest in the purchase and sale agreement and agreed to be bound by its terms. (BTA tr. 20.) Greenberg further conceded that Appellant owned the property as of February 9, 2015, and was liable on a note and mortgage on the property. (BTA tr. 15, 27.)

**{¶14}** The sale and purchase agreement identifies the seller as LSREF OREO 2 and identifies the purchaser as W & M Holdings. Yet, the buyer's closing statement of the sale identifies Appellant as the purchaser. And OREO 2 SUB, the grantee on the warranty deed, is not mentioned anywhere in the sale and purchase agreement. Greenberg explained that OREO 2 SUB was created pursuant to the sale and purchase agreement, which called for the creation of "NewCo." (BTA tr. 20.)

**{¶15}** The BOE argued that because OREO 2 SUB did not exist when the parties recorded the documents to effect the sale of the property, the original owner, LSREF OREO 2 transferred the property directly to Appellant in exchange for the sale price of $16,000,000. The BOE asserted that regardless of how the parties structured the sale, it was a sale of real property and nothing more. The BTA agreed, found that Appellant purchased the property for $16,000,000 in an arm's-length sale, and concluded that the property was valued at $16,000,000. In reaching this conclusion, the BTA found, among other things, that "[t]he purchase and sale agreement clearly indicates that the transfer of membership interest was done solely to transfer title to the subject property." Appellant now appeals the BTA's decision.

## II. Law and Analysis

### A. Standard of Review

**{¶16}** R.C. 5717.04 sets forth the standard of review for appeals from the BTA as follows:

> If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

**{¶17}** In reviewing a decision of the BTA, we are mindful that

"[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the [BTA] with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful."

*Schutz v. Cuyahoga Cty. Bd. of Revision*, 153 Ohio St.3d 23, 2018-Ohio-1588, 100 N.E.3d 362, ¶ 6, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.

**{¶18}** We must, therefore, affirm the BTA's decision if it is "reasonable and lawful." *Id*.; R.C. 5717.04; *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. While we apply a de novo review to the BTA's resolution of legal questions, we defer to the BTA's factual findings, including determinations of property value, as long as they are supported by reliable and probative evidence in the record. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 13.

## B. Basis for Property Valuation

**{¶19}** In the second and third assignments of error, Appellant argues the BTA erred in using personal property to value real estate. Appellant asserts the BTA erroneously used the transfer of personal property, i.e. the membership interest in a limited liability company, to calculate the value of real property for tax purposes. In the first assignment of error, Appellant argues the BTA's decision violates controlling precedent by holding that the sale of a partnership interest is equivalent to the sale of real property. We discuss these assigned errors together because they all relate to the appropriate method for valuing real property for purposes of ad valorem taxation.

**{¶20}** The Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." Ohio Constitution, Article XII, Section 2. R.C. 5713.01(B) provides that the county auditor shall appraise property "at its true value in money * * *." The best evidence of real-property value "'is an actual, recent sale of the property in an arm's-length transaction.'" *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 33, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977) at paragraph one of the syllabus.

**{¶21}** The parties dispute whether a sale of real property actually occurred. The BOE argues that Appellant's purchase of the membership interest in a limited liability company with the concomitant transfer of real estate constituted a sale of real property. Appellant, on the other hand, argues the only transfer was of personal property, i.e., the membership interest, and that such transfer is akin to the sale of stock, which the Ohio Supreme Court has held is not the same as the sale of real property. Appellant cites *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193, 697 N.E.2d 216 (1998); *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty Bd. of Revision*, 89 Ohio St.3d 450, 732 N.E.2d 978 (2000); and *Lakewood City Schools Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2016-177, 2016 Ohio Tax LEXIS 1975, to support its argument.[1]

**{¶22}** In *Salem*, the Ohio Supreme Court considered the sale of stock in a corporation whose only asset was real property. Salem argued that since the property was the corporation's only asset, the purchase of all the stock in the corporation was functionally equivalent to the purchase of real estate in an arm's length transaction on the open market. *Id*. at 194. However,

---

[1] In the first assignment of error, Appellant argues the BTA's decision is unlawful and unreasonable because it conflicts with these cases.

to support its request for a reduced valuation of the property, Salem presented evidence of the corporation's liabilities, the amount it owed in deferred income taxes, the value of each share of stock and the total number of shares, the amount of cash it held, and the amount of rent receivables. *Id*. at 193. There was no evidence of a transfer of real property, nor was there any evidence regarding the value of the real property. Therefore, the Ohio Supreme Court rejected Salem's argument that the stock purchase was functionally equivalent to the sale of real property and held that the stock value represented the company's value "subject to liabilities, market conditions, and all the other factors which contribute to or detract from the value of the company." *Id*. at 195.

{¶23} The court followed the same reasoning in *Gahanna-Jefferson*, which involved transfers of partnership interests in two consolidated cases, and held that the purchase of partnership interests "was the purchase of personal property" as opposed to real property. *Id*. at 453. However, the court affirmed the BTA's refusal to revalue the properties because there was no evidence in either case that the partnerships sold real property, that any real property transferred by deed, or that the property owner paid any consideration for a transfer of property. *Gahanna-Jefferson* at 452-453. The court observed:

> In this case no appraisal or expert accounting testimony was presented to establish the value of the real property separate from the value of the partnership itself. And in addition, there is no evidence in the record to show that there was any transfer of real property for a consideration. The BOE did not present evidence of value for the real property.

*Id*. at 454. Therefore, the court concluded, the BTA's decisions in both cases were reasonable and lawful.

{¶24} Similarly, in *Lakewood* the BTA affirmed the Cuyahoga County Board of Revision's refusal to increase the value of real property due to lack of evidence. Lakewood

argued it was entitled to an increase in the value of certain property based on a recent sale "in an arm's length transaction." *Lakewood*, BTA No. 2016-177, 2016 Ohio Tax LEXIS 1975, at 2. Although the transaction involved the sale of a membership interest in the ownership entity, *Lakewood* argued that the sale of a partnership interest is an appropriate basis for valuing real property. The BTA agreed that the sale of a partnership interest has been used as the basis for valuing property in other cases, but found that Lakewood failed to produce evidence of the property's value separate from the partnership interests, particularly since Lakewood failed to present evidence of the purchase agreement. *Id*. at 3-5.

{¶25} The BTA's decision in *Lakewood* alluded to the fact that a transfer of all the interest in an entity holding title to real property as its only asset may be considered evidence of a sale for purposes of real property valuation where the entity has no other assets or going concern. *Id*. at 4, citing *Parkland Assoc. Ltd. v. Cuyahoga Cty. Bd. of Revision*, BTA Nos. 2011-3893 and 2011-4060, 2014 Ohio Tax LEXIS 3184, 3.

{¶26} In *Parkland*, the BTA found that the sale of partnership interests constituted an arm's length sale of real property and that the purchase price reflected the true value of the property for tax purposes. In reaching this conclusion, the BTA distinguished the facts in *Parkland* from the facts presented in *Salem* and *Gahanna-Jefferson*:

> We acknowledge that the transfer was accomplished by a sale of the partnership interests of the owner, which has previously been found to be the transfer of personal property because it encompasses the going concern value of the ownership entity. *See Salem Med. Arts & Dev. v. Columbiana Cty. Bd. of Revision* (1998), 82 Ohio St.3d 193; *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2000), 89 Ohio St.3d 450. Unlike the cited cases, however, which involved an operational hospital and apartment complexes, the function of the owner partnership is solely to own the subject property, with no other going concern value. Thus, under these circumstances, despite the form of the transfer, we find the undisputed purchase price reflects the true value of the subject property.

*Id.* at 3.

**{¶27}** The BTA followed the same reasoning in *Akron City School District Bd. of Edn. v. Summit Cty. Bd. of Revision*, BTA No. 2014-4328, 2015 Ohio Tax LEXIS 1326. In support of its claim for revaluation, Akron submitted a copy of the "Membership Interest Purchase Agreement" arguing that the transfer of a membership interest was "a sale of real property, designed to avoid 'the real estate and transfer taxes valuation process.'" *Id*. at 3. The "Membership Interest Purchase Agreement" stated, in relevant part:

> B. The Seller [Exchange Street Associates L.L.C.] intends to form a single member Delaware limited liability company at its sole cost and expense and to transfer the entire Premises to such newly-formed single member Delaware limited liability company (the 'Company') [22 Exchange Student Housing L.L.C.] wholly-owned by the Seller.
>
> C. Following such transfer, the Purchaser [PEP Investments Operations, L.L.C.] desires to purchase from the Seller, and the Seller desires to sell to the Purchaser, all of the membership interests and all other ownership interests or rights in and to the Company (the 'Interests'), upon and subject to the terms and conditions set forth in this Agreement.

Thus, to effect the transfer, the entity identified as "the Purchaser," assigned its rights under the Membership Interest Purchase Agreement to the ownership entity, who defended against Akron's claim for revaluation. And, the ownership entity in *Akron* was formed for the sole purpose of holding the newly-acquired property. Therefore, the BTA appeals concluded that the transfer "was essentially a sale of the subject property, and not merely the sale of the personal property membership interest." *Id*. at 4-5.

**{¶28}** The facts of the instant case are more like *Parkland*, BTA Nos. 2011-3893 and 2011-4060, 2014 Ohio Tax LEXIS 3184, and *Akron* than *Salem, Gahanna-Jefferson*, or *Lakewood,* BTA No. 2016-177, 2016 Ohio Tax LEXIS 1975. While there was no evidence of a

transfer of real property in *Salem, Gahanna-Jefferson*, or *Lakewood*, the BOE in this case presented a purchase and sale agreement as well as a recorded deed evidencing the transfer of the property. Greenberg testified that Appellant was created to hold title to the property pursuant to the purchase and sale agreement, and the property was the company's only asset. (BTA tr. 15, 26.) At the time of the transfer, Appellant had no liabilities, except the note and mortgage on the property. (BTA tr. 16.)

{¶29} The structure of the property transfer in this case, which was accomplished through a series of agreements and transactions, was similar to the transfer of interests in *Akron*. Section 1.1 of Appellant's sale and purchase agreement indicates that the transaction involved the sale of real property and identifies the seller as LSREF OREO 2. The agreement identifies the purchaser as W&M Holdings, and indicates a purchase price of $16,000,000. As previously stated, Greenberg testified that W&M Holdings is a member of Appellant.

{¶30} Section 5 of the sale and purchase agreement, titled "Conditions to Closing," provides that the purchaser has the right to inspect the property and that the seller is obliged to obtain and deliver a survey of the property and a title commitment. Section 5.12, titled "Membership Interest Provisions" states, in relevant part:

> Prior to Closing, Seller and Purchaser shall reasonable [sic] cooperate with each other in the formation of NewCo, and Purchaser, at its sole cost and expense, shall file a certificate of formation for NewCo in the state of Ohio and shall prepare a certificate of sole member for NewCo, and Seller shall be the sole member of NewCo through the closing date. Prior to transfer of the Membership Interest to Purchaser at Closing, Seller shall transfer and convey the Property to NewCo subject only to the Permitted Exceptions. After formation of NewCo, Seller shall not cause NewCo to incur any liabilities or obligations (other than liabilities or obligations arising from and after the transfer of the Property to New Co, as provided above.) * * *
>
> Purchaser shall indemnify and hold Seller harmless from any and all suits, claims, demands, causes of action * * * in any way relating to NewCo whether arising

prior to or after the Closing (other than transfer taxes that may be payable by Seller in connection with the transfer of the Property to NewCo as provided above; however, if any governmental authority claims any damages or penalties against Seller for Seller's failure to pay such transfer taxes concurrently with Closing, the foregoing indemnification by Purchaser shall include any such damages or penalties claimed by any such governmental authority). This Section 5.12 shall survive the Closing.

Section 7.1 further provides that the seller is required to convey the property to NewCo.

{¶31} Greenberg testified that OREO 2 SUB was created pursuant to the sale and purchase agreement and that it owned nothing but the property on February 9, 2015. (BTA tr. 20, 26.) On that same date, OREO 2 SUB merged with Appellant. As a result of the merger, OREO 2 SUB ceased to exist, and Appellant, the sole surviving entity, acquired title to the property. As previously stated, the limited warranty deed filed with the Cuyahoga County Fiscal Officer shows that LSREF OREO 2 transferred the property to OREO 2 SUB. And since OREO 2 SUB merged with Appellant and ceased to exist, Appellant became the owner of the property. Moreover, because OREO 2 SUB held no assets apart from the property, only the property transferred from OREO 2 SUB to Appellant by virtue of the merger.

{¶32} Although Appellant maintains other items were transferred as part of the transaction, the evidence shows that the property was the only thing transferred to Appellant for the purchase price of $16,000,000. The evidence shows that the transfer of membership interest described in the sale and purchase agreement was done solely for the purpose of transferring title to the property. The documents and testimony demonstrate that this was a sale of real property and not a membership transfer. Therefore, the BTA's conclusion that the property was sold in a recent, arm's length transaction in February 2015 for $16,000,000 was lawful and reasonable.

{¶33} The first, second, and third assignments of error are overruled.

### C. Lack of Appraisal Evidence

**{¶34}** In the fourth assignment of error, Appellant argues the BTA erred in not requiring appraisal evidence in the absence of a sale of real estate. However, as previously stated, the BTA's determination that the property was sold in a recent, arm's length sale was reasonable and lawful based on the evidence presented. And, as previously stated, an actual recent sale of real property is the best evidence of the property's true money value. *Terraza 8*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, at ¶ 33, quoting *Conalco*, 50 Ohio St.2d 129, 363 N.E.2d 722, at paragraph one of the syllabus. Therefore, an appraisal of the property was unnecessary.

**{¶35}** The fourth assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Board of Tax Appeals to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
SEAN C. GALLAGHER, J., CONCUR