[Cite as *Johnson v. U.S. Title Agency, Inc.*, 2017-Ohio-2852.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103665**

---

## RICHARD G. JOHNSON, ESQ.

PLAINTIFF-APPELLANT

vs.

## U.S. TITLE AGENCY, INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-760834

**BEFORE:** Laster Mays, J., Keough, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** May 18, 2017

**ATTORNEYS FOR APPELLANT**

Robert D. Kehoe
Lauren N. Orrico
Tatyana Pishnyak
Kehoe & Associates L.L.C.
900 Baker Building
1940 East Sixth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEES**

**For U.S. Title Agency, Inc.**

Debra J. Horn
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 500
Beachwood, Ohio 44122

**For Chicago Title Insurance Company**

Alexander E. Goetsch
Sikora Law L.L.C.
8532 Mentor Avenue
Mentor, Ohio 44060

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant Richard G. Johnson, Esq. ("Johnson") appeals the trial court's grant of summary judgment on behalf of defendants-appellees, U.S. Title Agency, Inc. ("US Title") and Chicago Title Insurance Company ("Chicago Title") on several grounds, arising from the closing of a home renovation construction loan. After a thorough review of the record, the matter is reversed and remanded.

## I.    BACKGROUND AND FACTS

{¶2} In 2008, Johnson hired Berns Custom Homes ("Berns") as the general contractor ("Contractor") to renovate his recently purchased home in Bentleyville, Ohio ("Property"). Johnson obtained a $815,581 construction loan (the "Loan") from KeyBank National Association ("KeyBank") to satisfy the existing mortgage and finance the renovations.

{¶3} Johnson, an attorney specializing in legal malpractice issues, retained counsel Mark Wachter ("Wachter") to assist him with negotiating the Loan. A key factor in the negotiations was to ensure that the project proceeded to completion and that contractual and insurance protections were sufficient to accomplish this goal.

{¶4} At Wachter's recommendation, the parties agreed that US Title would serve as the closing agent, escrow agent, and title agent for Chicago Title who would issue the title policies. KeyBank provided written closing instructions to US Title for the transaction, entitled "Construction-to-Permanent Closing Instructions" ("Closing

Instructions"). Wachter allegedly issued verbal closing instructions to US Title ("Johnson Closing Instructions"), asking for the same protections against mechanics liens that KeyBank received, and for compliance with KeyBank's Closing Instructions.

{¶5} Closing took place at the offices of US Title, who was charged with, among other responsibilities, adhering to the Closing Instructions or absorbing liability for their failure to do so. Documents executed at the closing included the construction loan agreement and rider dated May 27, 2010 (collectively "Loan Agreement"), and the mortgage agreement that included a construction rider ("Mortgage"). The Mortgage, executed by Johnson and KeyBank, and recorded by US Title, included a construction rider, and a provision that no lien whatsoever could take priority over the Mortgage.

{¶6} Following the printed provisions, the Loan Agreement contains a signature block signed by Johnson and the date May 27, 2010. The next page contains a contractor's consent clause (the "Consent Clause") with a signature block for Berns and the date of May 27, 2010 inserted, followed by a signature page executed by a KeyBank director, on behalf of KeyBank.

{¶7} The Consent Clause provides that the Contractor "hereby subordinates its lien on the Property, now existing or hereafter arising, to the lien of the Security Documents." The sum of $477,723.00 is also set forth, representing the amount of the construction contract between Johnson and Berns. The signature portion below the subordinate clause contained typewritten language:

May 27, 2010
CONTRACTOR

Berns Custom Homes, Inc.
By: _____
        Name: Justin Berns
             Authorized Signatory

**{¶8}** US Title concedes in its appellate brief that, "when signed," the Consent Clause, "provides for the Contractor to contractually subordinate his rights to any liens the Contractor may file on the property, now or in the future, in favor of the Mortgage such that the Mortgage would still remain in first position." Though the May 27, 2010 date is inserted below the clause, and the name of the authorized signatory for Berns is typed underneath the signature line, US Title states that it did not have Berns sign because Berns was not a party to the Loan, and it was not required by the Closing Instructions.

**{¶9}** On June 14, 2010, US Title provided Johnson with a copy of the HUD-1 settlement statement setting forth the charges and allocations for the transaction. The HUD-1 reflects Johnson's payment for Closing Protection Coverage ("CP Coverage"). On July 15, 2010, US Title provided Johnson's counsel with a copy of the owner's policy of title insurance ("Owner's Policy") issued by Chicago Title for the Loan and Mortgage. Also on that date, US Title states it provided KeyBank with a copy of the lender's policy of title insurance ("Lender's Policy") issued by Chicago Title.

**{¶10}** As required by Ohio law,[1] Johnson was offered CP Coverage via a closing protection letter form ("CP Letter") from US Title that Johnson signed indicating acceptance. According to the language of the CP Letter, the CP Coverage indemnified

---

[1] R.C. 3953.32.

Johnson for any loss resulting from listed conditions, including the closing agent's "[f]ailure to comply with any applicable written closing instructions, when agreed to by the Licensed Agent [US Title]." No exclusions are listed in the CP Letter. The parties agree that Johnson paid for and was entitled to the CP Coverage, but did not receive a copy of the CP Coverage.

{¶11} During September 2010 to October 2010, a dispute arose between Berns and Johnson. Johnson terminated Berns. Berns and four subcontractors filed mechanic's liens for $297,191. The matter proceeded to mandatory mediation and, later, to arbitration.[2]

{¶12} US Title notified KeyBank of the liens on December 29, 2010. KeyBank dishonored Johnson's draw request as a result. Subsequently, Johnson discovered that: (1) the Lender's Policy had not been issued to KeyBank until after KeyBank was provided with notice of the liens, an assertion disputed by US Title, (2) the CP Coverage policy that Johnson purchased had not been provided to Johnson, (3) the Consent Clause containing the Contractor's consent to subrogation to the Mortgage of all liens had not been executed by the Contractor; (4) neither the Owner's Policy nor the Lender's Policy contained a future advance endorsement or exclusion protecting against priority of mechanics liens,

---

[2] The arbitrator found that Johnson breached the agreement by failing to pay for certain work, and prevented Berns and the subcontractor from further performing. Berns filed suit in the common pleas court to reduce the $166,550 arbitrator's award to judgment. *Berns Custom Homes, Inc. v. Johnson*, Cuyahoga C.P. No. CV-12-791858. We affirmed the trial court's determination granting Berns's request in *Berns Custom Homes, Inc. v. Johnson*, 8th Dist. Cuyahoga Nos. 100837 and 101014, 2014-Ohio-3918.

and (5) the use of an open end form of mortgage instead of the Mortgage used in this transaction would have assured priority for future advances.

{¶13} On several dates between December 31, 2010 and January 17, 2011, Johnson and his counsel corresponded with US Title and Chicago Title requesting removal of the liens pursuant to the CP Coverage and the title insurance under the Owner's Policy, and asserting Johnson's third-party beneficiary status under KeyBank's Lender's Policy. Johnson also requested that the Owner's Policy be corrected to remove the lien exceptions, and that appellees satisfy the mechanics liens claim. Johnson asserted that appellees' failure to comply with the Closing Instructions caused the current issues. Appellees did not respond to the claim requests. The liens remained and KeyBank refused to release further draws.

{¶14} Johnson filed suit against US Title and Chicago Title. The complaint asserts six counts:

> I.   US Title — breach of contract against US Title including the failure to insure for mortgage priority, violating the Closing Instructions, failing to have the contractor sign the Construction Loan, refusal to honor the title policies.
>
> II.   Chicago Title — breach of contract against Chicago Title including the failure of Chicago Title's agent, US Title, to properly handle the closing; and denial of claims under the owner's policy, closing protection coverage, and as a third-party beneficiary of KeyBank's Lender's Policy.
>
> III.   Chicago Title and US Title — specific performance and injunctive relief requiring that appellees extinguish the liens, provide for subordination of the liens or issue title insurance insuring over any after-filed liens.
>
> IV.     US Title — alleging US Title was negligent in performing professional services by failing to issue the proper title insurance policies,

filing closing documents without properly examining them for compliance with the requirement that the Mortgage must maintain priority over subsequent liens.

V. US Title — breach of fiduciary duty to Johnson, including the failure to correctly conduct the closing to effect the intention of the parties that the Mortgage maintain priority at all time, and to record and/or issue the proper documents.

VI. Chicago Title and US Title — breach of duty of good faith and fair dealing by failing to remedy the problems caused by the breaches set forth in Counts I through V.

{¶15} Private mediation between the parties was unsuccessful. The court ordered plaintiff's expert deadline of May 15, 2013, defense's expert deadline of June 15, 2013, and dispositive motion deadline of July 1, 2013.

{¶16} Chicago Title filed for summary judgment on June 27, 2013, supported by evidence including testimony from Johnson, Edward R. Horejs, Jr. ("Horejs") of Chicago Title, Michael Gerome ("Gerome") of US Title, title expert Michael Waiwood ("Waiwood"), and various exhibits. US Title filed for summary judgment on June 28, 2013. The motion was supported by Waiwood's affidavit. Appellees also filed motions to prevent Johnson from offering expert witness testimony at trial due to his failure to designate an expert by the deadline.

{¶17} Johnson filed for summary judgment on July 1, 2013, with evidence that included a supporting affidavit by Johnson. Johnson was granted leave until August 14, 2013, to respond to appellees' motions for summary judgment. On August 14, 2013, Johnson filed the replies to summary judgment, and a motion for leave to submit the expert report of Dr. Robert Belinger ("Belinger"), opposed by appellees. A series of motions

ensued between the parties regarding the expert report; however, there are no dispositive journal entries in the record resolving any of these motions. On August 29, 2013, Johnson filed the notice of original affidavit of Belinger.

{¶18} On September 18, 2013, the trial court granted appellees' motions for summary judgment, and denied Johnson's motion, finding:

(1) Johnson's claims are excluded by the express terms of the Owner's Policy and CP Coverage as the liens were created by Johnson after closing and after he chose to fire the Contractor;

(2) Johnson's claims were excluded by the CP Coverage terms, as Johnson created the lien problem and he failed to provide written closing instructions to US Title seeking a variance of the customary exclusions and limitations regarding mechanics liens;

(3) Johnson lacked standing to assert a breach of contract regarding the KeyBank's Lender's Policy and Closing Instructions, as he failed to demonstrate that he was a party to those documents; and

(4) the claims for bad faith, specific performance and injunctive relief failed as a result of the court's finding on the stated issues.

{¶19} Johnson appealed; however, this court dismissed the appeal because Counts IV and V of the amended complaint had not been resolved.[3] On February 21, 2014, the trial court dismissed the two counts pursuant to Civ.R. 41(A), without prejudice.

{¶20} A second appeal was filed on March 24, 2014.[4] This court granted Johnson's motion to dismiss the appeal on June 13, 2014, because the Civ.R. 41(A) dismissal was not sufficient to constitute a final appealable order:

---

[3]    8th Dist. Cuyahoga No. 100535 (Nov. 15, 2013).

[4]    8th Dist. Cuyahoga No. 101156 (June 13, 2014).

A court order granting a motion for summary judgment without actually entering judgment for any party is not an final order. *Bapst v. Goodwin*, 4th Dist. Pike No. 08CA780, 2009-Ohio-6244, ¶ 9. It is not made final or appealable by the dismissal of some other claims without prejudice.

{¶21} The trial court returned the case to the active docket and issued dispositive motion deadlines for the remaining counts. US Title and Johnson filed "renewed" motions for summary judgment. Johnson's filing included an affidavit from Wachter. The affidavit was not submitted with Johnson's prior motion for summary judgment.

{¶22} On September 24, 2015, the trial court granted summary judgment for appellees on Counts IV and V of the amended complaint without opinion. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶23} Johnson advances four assignments of error proposing various grounds upon which the trial court improperly granted summary judgment in this case:

I. The trial court erred in granting summary judgment in favor of defendants as to plaintiff's claims for breach of contract where defendants failed to properly execute the Closing Instructions, failed to honor the terms of their policies, and failed to issue the correct policy.

II. The trial court erred in granting summary judgment in favor of US Title as to plaintiff's claim for breach of fiduciary duty where US Title served as an escrow agent for plaintiff and KeyBank, and breached its duty to follow the Closing Instructions.

III. The trial court erred in granting summary judgment in favor of US Title as to plaintiff's claim for negligence where US Title failed to secure the correct form of coverage for plaintiff and failed to follow Closing Instructions.

IV.    The trial court erred in granting summary judgment in favor of defendants as to plaintiff's claim for bad faith where defendants failed to acknowledge receipt and pay plaintiff's claim.

## III.    STANDARD OF REVIEW

**{¶24}**    Our standard of review for summary judgment appeals is de novo:

We review the trial court's decision on summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In so doing, we use the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on an essential element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists.  *Id.*  To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts.  *PNC Bank, N.A. v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477, ¶ 9.

*Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga No. 100989, 2015-Ohio-301, ¶ 9.

**{¶25}**   The following elements must be established to grant summary judgment:

The motion for summary judgment may only be granted when the following are established:   (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

*Id.*

**{¶26}**    We, as the reviewing court, evaluate the record in a light most favorable to

the nonmoving party.  *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th

Dist.1990). Any "doubts must be resolved in favor of the nonmoving party." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

## IV. LAW AND ANALYSIS

{¶27} Johnson argues that the trial court decision misconstrues the facts and is contrary to Ohio law. We agree.

### A. Preliminary Evidentiary Issues

{¶28} An appellate court reviews "the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." *Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 208, 598 N.E.2d 1315 (5th Dist.1992). Appellees argue the Belinger and Wachter affidavits should be excluded from consideration because they were not properly before the court.

### 1. Belinger Affidavit and Report

{¶29} Appellees posit that the affidavit and report of Belinger (collectively "Belinger Report") may not be considered because the affidavit was not accompanied by the report upon initial filing, the report was submitted after the expert disclosure deadline of May 15, 2013, and that, due to the trial court's failure to rule on the subsequent motion for leave to file the report, the motion was presumptively denied when final judgment was granted. *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13 ("a motion not expressly decided by a trial court when the case is concluded is ordinarily *presumed* to have been overruled.") (emphasis added); *Tanio v. Ultimate Wash*, 8th Dist. Cuyahoga No. 98826, 2013-Ohio-939, ¶ 21, fn. 3.

{¶30} "A rebuttable presumption is a presumption which is not conclusive and which may be contradicted by evidence." *Forbes v. Midwest Air Charter, Inc.*, 86 Ohio St.3d 83, 85, 1999-Ohio-85, 711 N.E.2d 997. Thus, we examine the record.

{¶31} On June 28, 2013, US Title filed a liminal pretrial motion requesting that Johnson be barred from presenting expert testimony at trial that, at the time, was set for September 23, 2013, for failure to meet the May 15, 2013 expert identification deadline. The trial court did not rule on that motion. Even if the motion had been expressly denied, liminal pretrial motions may be reconsidered by the trial court at trial. *Williams v. State*, 8th Dist. Cuyahoga No. 98741, 2013-Ohio-1040, ¶ 13.

{¶32} On August 14, 2013, Johnson timely submitted his replies to appellees' briefs in opposition to Johnson's motion for summary judgment, that included the Belinger Report, concurrently filing a motion for leave to submit the report.[5] The focus of the Belinger Report is to opine whether the closing by US Title complied with the KeyBank Closing Instructions and the closing instructions that Johnson verbally provided. A series of motions ensued requesting the report be stricken and motion for leave denied. No rulings were made on any of the motions.

{¶33} Reviewing the record, the trial court's decision does not reflect reliance on the expert reports and affidavits,[6] but focuses on the plain language of the policies for the

---

[5] Johnson filed a notice of filing of Belinger's original affidavit on August 29, 2013.

[6] The only expert reference is to Waiwood's assertion that the phrase "created, suffered, assumed, or agreed to" in the mechanic's lien exclusion means exactly what it says, an interpretation that is clear on its face.

axiom that the coverage of conduct under an insurance policy is provided as defined in the policy. *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 8; *see also Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273, 1999-Ohio-62, 719 N.E.2d 955 (a title insurance policy is a matter of contract, interpreted by looking to the plain and ordinary meaning from the contents).

{¶34} We conclude that the trial court's: (1) stated reliance on the plain language of the documents as described in the trial court's decision; (2) failure to rule on all motions relating to the Belinger Report, both for or against; and (3) failure to rule on appellees' earlier motion seeking to bar Johnson from presenting any expert testimony during the case does not support the enforcement of a presumption of final denial. "Fairness and justice are best served when a court disposes of a case on the merits. Only a flagrant, substantial disregard for the court rules can justify a dismissal on procedural grounds." *De Hart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 192-193, 431 N.E.2d 644 (1982).[7]

### 2. Wachter Affidavit

{¶35} Appellees also argue that the affidavit of attorney Wachter, submitted with the summary judgment on Counts IV and V is barred because it was not submitted with the

---

[7] Our holding in *Wolk v. Paina*, 8th Dist. Cuyahoga No. 93095, 2010-Ohio-1755, affirming a motion to strike unauthenticated documents supporting opposition to summary judgment is distinguishable from the failure to immediately attach Belinger's affidavit to the report. In that case, the subsequent submission of a curative affidavit was deficient because the documents requiring authentication were referenced in, but not attached to, the remedial affidavit. *Id.* at ¶ 29-30. That is not the case here where the curative affidavit included the report.

first motion for summary judgment. Upon dismissal by this court, finding that the addition of Civ.R. 54(B) language did not make the judgment final, the trial court reinstated the case to the active docket and set a dispositive motion deadline of May 11, 2015 on Counts IV and V.

{¶36} The remanded counts relate to negligence and breach of duty regarding the Closing Instructions and improper title policies, a component of all counts in the case. Implicit in a Civ.R. 54(B) remand is the conclusion that the order was not final and appealable because the underlying claims are inexplicably intertwined. *Pesta v. Parma,* 8th Dist. Cuyahoga No. 92363, 2009-Ohio-3060, ¶ 13, quoting *Internatl. Managed Care Strategies, Inc. v. Franciscan Health Partnership, Inc*., 1st Dist. Hamilton No. C-010634, 2002-Ohio-4801, ¶ 9 (claims arising from the same transaction or conduct are "inextricably intertwined and not appealable despite Civ.R. 54(B) certification.")

{¶37} Johnson has maintained from the inception of the case, and averred in his affidavit opposing summary judgment that, in addition to the KeyBank Closing Instructions, Wachter verbally provided closing instructions to US Title on Johnson's behalf. Wachter's affidavit reiterates the verbal provision of those Closing Instructions, a fact acknowledged in the trial court's entry stating that Johnson provided no "written" instructions. The claims in this case are inextricably intertwined and the affidavit was submitted in response to a trial court entry directing briefing of the issues. Therefore, consideration of the Wachter affidavit cannot be separated from the total analysis and is part of our de novo review of the record, a finding that does not prejudice appellees.

**B.** **First Assignment of Error — Breach of Contract**

**1.** **Closing Instructions**

**a.** **Johnson's Closing Instructions**

**{¶38}** Johnson asserts the parties used US Title as the agent at Wachter's suggestion, and that Wachter verbally advised US Title that Johnson required the same title policy coverage that KeyBank requested in the Closing Instructions, removing standard exceptions or other exclusions based on mechanic's liens, and containing a future advance endorsement. Wachter also advised that US Title was to comply with the KeyBank Closing Instructions.

**{¶39}** The affidavits of Johnson and Wachter support the provision of verbal closing instructions. Appellees argued, and the trial court determined, that Johnson did not provide "written instructions." The issue of whether Johnson provided closing instructions, and whether the instructions were required by law, policy, custom or practice to be in writing, is a genuine issue of material fact, underlying Johnson's claims in this case.[8]

**b.** **KeyBank Closing Instructions**

**{¶40}** It is undisputed that US Title served as Chicago Title's agent for escrow, title, and closing. Johnson also argues that his status as the borrower named in the Loan Agreement and Closing Instructions makes him a party with standing to enforce

---

[8] Notwithstanding the foregoing, the provision of verbal closing instructions does not apply to closing protection coverage under R.C. 3953.32 which requires a violation of "written closing instructions."

compliance by appellees. Johnson asserts that the relationship is contractual, either express, implied in law or fact, or via third-party beneficiary, and that the requisite contractual factors of offer, acceptance, capacity, consideration, mutual assent, and legality of object and consideration, are present. *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835 (10th Dist.).

{¶41} US Title and Chicago Title argue that the trial court correctly determined that Johnson lacks standing to sue for breach, because he failed to introduce evidence that he was a party to KeyBank's Closing Instructions. Johnson directs our attention to this court's holding to support his position. *Pippin v. Kern-Ward Bldg. Co.*, 8 Ohio App.3d 196, 456 N.E.2d 1235 (8th Dist.1982).

{¶42} The Pippins contracted with Kern-Ward to construct a home. *Id.*, at *197. Continental Federal Savings and Loan Co. ("Continental") agreed to finance and serve as escrow agent. The Pippins signed a release and acceptance form but attached a list of items that needed to be addressed by the contractor, accompanied by the notation "call me," written on a withdrawal slip with their telephone number. The papers were submitted to Continental.

{¶43} Upon receipt of the release, Continental closed the transaction and paid the contractor. Pippins sued Continental for breach of contract, arguing that Continental was required to call them before disbursing funds. *Id.* The trial court granted summary judgment in favor of Continental and Pippins appealed.

**{¶44}** In analyzing the appeal, this court addressed the nature of an escrow agreement:

> An escrow is a matter of agreement between parties, usually evidenced by a writing placed with a third-party depositary providing certain terms and conditions the parties intend to be fulfilled prior to the termination of the escrow. *The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands.* Squire v. Branciforti, 131 Ohio St. 344, 2 N.E.2d 878 (1936).

(Emphasis added.) *Id.* at 198; *Calhoun v. McCullough*, 8th Dist. Cuyahoga No. 60271, 1991 Ohio App. LEXIS 1844, at *7-8 (Apr. 25, 1991).

**{¶45}** We also described the scope of an escrow agent's responsibilities:

> The depositary may not perform any acts with reference to the handling of the deposit, or its disposal, which are not authorized by the contract of deposit. Thus, a depositary holding a deed conveying land and a sum of money to pay therefor, the transaction to be consummated at a definite, fixed time which is made the essence of the contract, may not, in the absence of express authority from the vendee, surrender to the vendor any part of the money held, to enable him to remove encumbrances and perfect his title. *Likewise, if an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby.* 20 Ohio Jurisprudence 2d 215, Escrows, Section 8.

> The duty of the escrow agent is therefore clear — to carry out the terms of the agreement as intended by the parties.

(Emphasis added.) *Id.*; *Squire v. Branciforti*, 131 Ohio St. 344, 354, 2 N.E.2d 878 (1936) (a depository may not perform any acts that are not authorized by the contract). "[T]he very name 'escrow' gives it the earmarks of a trust." *Pippin* at 198, quoting *Squire* at 355. "Thus, the escrow agent is a fiduciary agent for both parties to a purchase

agreement." *Saad v. Rodriguez,* 30 Ohio App.3d 156, 158, 506 N.E.2d 1230 (8th Dist.1986).

**{¶46}** The *Pippin* escrow agreement provided that Continental would not withhold settlement of the escrow without a court order, if the terms of the escrow agreement have been complied with. We agreed with the trial court that the blank withdrawal slip with the notation "call me" could not be admitted into evidence to vary the clear and unambiguous terms of the agreement:

> Whether the plaintiffs requested that the bank withhold the funds is irrelevant. An escrow agent's duties are fixed and limited by the escrow agreement. The escrow agreement between the plaintiffs and defendant builder stated that the 'bank * * * assumes no responsibility as to * * * physical conditions of premises * * * alterations or additions to the premises.'

> "Continental could not alter the terms of the agreement on the request of one of the parties. Continental's duties could only be changed by mutual consent of both parties. Because there was no agreement, the bank had no obligation to withhold funds. When the bank received all the materials necessary to allow it to close the transaction, it properly did so."

*Id.* at 199.

**{¶47}** *Pippin* involves an express agreement. Case law also supports the premise that an escrow agreement need not be express or formal, and may be deemed to exist where there are only closing instructions:

> Ohio courts have held that escrow agreements do not have to be in writing. In *Waffen* [*v. Summers*, 6th Dist. Ottawa No. OT-08-034, 2009-Ohio-2940,] at ¶30, the court specifically discussed implied escrow agreements:

> No precise form of words is necessary to constitute an escrow. The term "escrow" need not be used. * * * Thus, whether an escrow exists in any case depends not so much upon the terms the parties may use as upon the

intent with which the deed or paper is deposited in the hands of a third-party.

*Union Sav. Bank*, 191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835, ¶ 22.[9]  *See also Forum Restaurants, Inc. v. Zimmerman,* 8th Dist. Cuyahoga No. 44077, 1982 Ohio App. LEXIS 13506 (May 20, 1982) (finding a genuine issue of material fact as to the existence of an oral or written escrow agreement).

{¶48}  A review of Ohio case law on an analogous fact situation of the standing of a borrower to sue an agent for breach of closing instructions issued by a lender, provided a narrow, and distinguishable result.  In *Hughes v. Knapp*, 10th Dist. Franklin No. 08VA07-9735, 2009 Ohio Misc. LEXIS 12278 (Sept. 21, 2009), the Franklin  County Court of Common Pleas addressed a breach of contract claim by Hughes against title agent Knapp.

{¶49}  Hughes obtained title to the property without a title search.  The lender, Royal Bank of Pennsylvania ("Royal Bank"), contacted Knapp to conduct a search for purposes of a lender's policy.  *Id*. at *2.  Royal Bank's closing instructions to Knapp directed that the mortgage be afforded a first lien priority; however, a prior mortgage existed at the time of the mortgage recording.  The prior mortgage holder filed for foreclosure.  Hughes sued Knapp for negligence, breach of contract, and indemnification.

---

[9] *Squire's* statement that an escrow agreement is "usually in writing," has resulted in a split among the appellate courts regarding whether "usually" translates into "shall."

{¶50}    The court held that Hughes was an incidental beneficiary who may have gained a benefit, but there was no intention by any party to confer a benefit on Hughes. The finding was based on the fact that:   (1) Hughes had no contact with Knapp (*Id*. at *2-3); (2) Royal Bank contacted Knapp for the purpose of providing lender's title insurance and filing the mortgage securing its interest. *Id.* at *6.   In contrast, the relationship between Johnson and appellees is not incidental.

{¶51}    We also look to other jurisdictions.   *Phleger v. Countrywide Home Loans, Inc.*, N.D.Cal. No. C 07-01686 SBA, 2009 US Dist. LEXIS 10105 (Jan. 28, 2009), provides direction.   Phleger sued several Countrywide entities for violating the Federal Truth in Lending Act, 15 U.S.C. 1601, et seq., cancellation and rescission of a $3,300,000  mortgage and $550,000 home equity line of credit. Countrywide countersued for foreclosure. Phleger also sued Stewart Title of California, Inc. ("Stewart"), the escrow and settlement agent for the transaction, for negligence, breach of fiduciary duty, and indemnity.   Several third-party defendants were also named who were involved with defrauding Phleger and siphoning money from the transactions.   *Id*. at *2-4.

{¶52}    The closing of the transaction took place by mail.   The documents were executed in Las Vegas by someone purporting to be Phleger; however, Phleger was in California at the time of the alleged signatures and denied signing any of the documents. Stewart closed and disbursed funds based on the forged documents.

{¶53}    Pertinent here, Phleger claimed indemnification by Stewart for breach of Countrywide's escrow and closing instructions that, if followed, would have prevented the

improvident closing and settlement. *Id.* at *20. Stewart argued that "a *borrower* may not claim a breach of duty arising from a *lender's* closing instructions to an *escrow agent*, as they only create a duty running from the *escrow agent* to the *lender*." (Emphasis added.) *Id.* at *28. Phleger responded that she is a third-party beneficiary of Countrywide's instructions. *Id.*

{¶54} The appellate court looked to the California Supreme Court's holding in *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal.4th 705, 117 Cal.Rptr.2d 541, 41 P.3d 548 (2002), that sets forth six factors to consider in determining when an escrow agent may be held liable to a borrower as a third-party beneficiary for breach of a lender's closing instructions:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the forseeability of harm to him [or her], [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. *Id.* (quoting *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958)).

*Phleger* at * 28-29. The *Phleger* court found the existence of genuine issues of material fact:

> A factfinder could find that Phleger is Countrywide's borrower, and could find that Stewart had clear evidence of fraud before it, and by closing, breached its duty to follow [several of] the closing instructions. If a factfinder so found, then all six *Summit* factors would favor finding Phleger to be their third-party beneficiary, and Stewart would be liable to her for breaching its duty to follow them.

(Emphasis added.) *Id.* at *37.

{¶55} The court also denied Stewart's request for summary adjudication of Phleger's negligence and breach of fiduciary duty claims to the extent based on Stewart's

breach of its duty to the parties, to following the escrow instructions and the duty to follow certain of the closing instructions. *Id*. at \*40. We find that *Phleger* is applicable to the instant case, where there was clear evidence of no signature in the contractor's section, accompanied by an explicit directive in the Closing Instructions to fully execute the documents as typed, the duty to follow certain of the closing instructions.

**{¶56}** A similar conclusion regarding a borrower's third-party beneficiary status was reached in *Stanton v. Bank of Am., N.A.*, D.Haw. No. 09-00404 DAE-LEK, 2010 US Dist. LEXIS 143123 (Oct. 19, 2010). Stanton refinanced her property. Bank of America, N.A. as successor to Countrywide Bank, N.A. ("Countrywide") served as lender. Fidelity Title & Escrow of Hawaii, Inc. ("Fidelity") served as the escrow agent. Stanton signed the documents at Fidelity's office but admitted she did not review them. *Id*. at \*4.

**{¶57}** Stanton filed suit. Stanton claims included a breach of Fidelity's fiduciary duty by failing to comply with the "Lender's Closing Instruction." *Id*. at \*17. Fidelity argued that the escrow instructions, and not the "Lender's unilateral Closing Instructions," controlled the agent's duty to Stanton. *Id*. at \*18.

**{¶58}** The court observed that a third-party beneficiary may sue to enforce contract provisions for which they are intended to benefit. *Id.*, citing *Trans-Bay Engineers & Builders, Inc. v. Hills,* 551 F.2d 370, 378, 179 US App. D.C. 184 (D.C. Cir.1976). The court found Stanton to be a third-party beneficiary:

> Review of the Lender's Closing Instructions, specifically the instruction at issue regarding the provision of Loan documents to Plaintiff at signing * * * reveals that Plaintiff, as a non-signatory third-party, was explicitly named in the contract as the "Borrower" and that the signatories to the instructions

intended to confer a benefit on Plaintiff as the Borrower. *See Sher* [*v. Cella*, 114 Haw. 263, 160 P.3d [1250,] at 1256-57 [(Haw.App.2007)] (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, S.A.S., 269 F.3d 187, 196-97 (3rd Cir. 2001) ("[A] third[-]party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third[-]party beneficiary status."); *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir.1994).

Further, the Lender's Closing Instructions satisfy the three-part test described in *E.I. DuPont de Nemours*, and cited by the court in *Sher*, in that the lender, Countrywide, and Fidelity Escrow intended that Plaintiff benefit from the agreement (in the form of facilitating Plaintiff's refinancing), the benefit was intended in satisfaction of a pre-existing obligation to that party * * * and the intent to confer the benefit was a material part of the parties' purpose in entering into the agreement (there would be no escrow without the Loan between Countrywide and Plaintiff). *Id.*; *see also Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Sup. 1990) ("In order for third-party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on such third-party, whether it be creditor or donee, should be a material part of the contract's purpose."). Thus, Plaintiff can be considered third-party beneficiary to that agreement.

*Id*. at *19-20.

{¶59} For a third-party to be an intended beneficiary under a contract in Ohio, the evidence must demonstrate that the contract was intended to directly benefit that party. "Generally, the parties' intention to benefit a third-party will be found in the language of the agreement." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12. In this case, the parties' intention is indicated in the Closing Instructions that, among other factors, named Johnson as the customer, provided a material benefit in the provision of a loan, directed that the Loan Documents be fully executed exactly as

typed, and the borrower must initial any changes. *Stanton*, D.Haw. No. 09-00404 DAE-LEK, 2010 US Dist. LEXIS 143123 at *19-20.

{¶60} US Title admittedly played a tripartite role in this transaction, providing services to KeyBank and Johnson. It is incongruous to conclude that where a borrower agrees with the lender's closing instructions, such as fully executing the Loan Agreement, the borrower must issue a duplicate of that instruction to have standing to pursue the agent's failure to follow the instructions that results in damage to the borrower. This is particularly true where all parties were aware that intervening liens would not be tolerated, and the Loan Agreement contains a clause addressing the issue.

{¶61}      US Title admits that:

*When signed*, [the Clause] provides for the Contractor to contractually subordinate his rights to any liens the Contractor may file on the property, now or in the future, in favor of the Mortgage such that the Mortgage would still remain in first position.

(Emphasis sic.) US Title brief, p. 6. *See also*, the deposition testimony of Chicago Title's Horejs, attached to Chicago Title's motion for summary judgment. "The only thing that would have prevented the mechanic's lien[s] from not [sic] trumping the mortgage would be the contractor's subordination."

{¶62}    The contractor's clause in this case was contained in the Loan Agreement signed by Johnson and KeyBank. Johnson's signature page, effective as of the May 27, 2010 date typed on the first page of the Loan Agreement, contains his signature as well as his typewritten name under the signature line.

**{¶63}** The next page contains the contractor's clause and signature section, followed by the signature page of KeyBank. The contractor's clause provides that any mechanics liens issued by the Contractor and, as a result, its subcontractors, will remain subordinate to the Mortgage:

> CONTRACTOR'S CONSENT: The undersigned hereby certifies to LENDER, that it is the Contractor for the OWNER named herein above for the construction of the Improvements, that the total contract price for said construction covered by our Agreement is $477,732.00 and in consideration of the making of the Loan by LENDER to OWNER, the undersigned consents to the assignment by the OWNER to LENDER of the Construction Contract and all permits, Plans and Specifications concerning the Improvements. The undersigned hereby subordinates its lien on the Property, now existing or hereafter arising, to the lien of the Security Documents. Any funds received by the undersigned will be used by the undersigned will be used only to pay for costs that are authorized hereunder. The undersigned agrees that, in the event of default by OWNER under this Agreement, it will at LENDER'S request continue performance of the Construction Contract in accordance with its terms, provided it is reimbursed in accordance with the Construction Contract for all work, labor and materials provided by the undersigned. The undersigned will immediately notify LENDER, in writing, in the event that OWNER defaults in making any payments owed the undersigned under the Construction Contract or in the event of any other default occurring thereunder. By executing this consent, Contractor will not be deemed in privity with LENDER.

> Dated 27th day of May, 2010

> CONTRACTOR
> Berns Custom Homes, Inc.
> By: _____
>       Name: Justin Berns
>           Authorized Signatory

**{¶64}** The Closing Instructions state that, "[a]ll documents are to be executed exactly as typed. All forms must be properly dated, witnessed and acknowledged." Any changes to the document must be initialed by the customer. The Loan Agreement is

included in the list of items to be "properly executed." The insertion into the clause of the contract price, closing date, and the contractor's identifying information indicates a clear expectation that the contractor would sign.

**{¶65}** In addition to the clause executions, Johnson asserts other breaches of the instructions. Those breaches include closing the transaction with the wrong form of mortgage, and failure to include certain endorsements or exclusions to the title policies.

**{¶66}** Viewed in a light most favorable to Johnson, we find that the trial court erred in finding that Johnson lacks standing to assert a breach of contract action based on the KeyBank Closing Instructions. The fact that the closing agent certification contained on KeyBank's form contains a provision that the settlement agent will be liable for KeyBank's losses does not negate liability to Johnson.

### 2.      Closing Protection Coverage Policy ("CP Coverage")

**{¶67}** CP Coverage's are policies of insurance. R.C. 3953.32(C); *Horvath v. Lawyers Title Ins. Corp*., 11th Dist. Portage No. 2012-P-0068, 2013-Ohio-1295, ¶ 33. The interpretation of insurance policies are governed by contract principles. *Andrews v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 97891, 2012-Ohio-4935, ¶ 14. Except where language in the policy indicates otherwise, phrases and words are to be construed based on their plain and ordinary meaning. *Id.* at ¶ 15. Ambiguities are construed liberally in favor of the insured. *Id.* at ¶ 16.

**{¶68}** Johnson was not provided with a copy of the CP Coverage; however, appellees advise that there is only one form of policy in Ohio. Thus, the terms of the CP

Coverage issued to KeyBank are identical to those that cover Johnson.    A CP Coverage is a contract that extends the title agency relationship to the acts of the agent during escrow closing activities and services.    *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 104, 878 N.W.2d 816 (2016).    "'[A] breach of contract action [on a CP Coverage] may be maintained independent of the title insurance policy.'"    *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 578-579 (6th Cir.2014), quoting *New Freedom Mtge. Corp. v. Globe Mtge. Corp.*, 281 Mich.App. 63, 761 N.W.2d 832 (2008), *overruled in part on other grounds*, *Bank of Am.*, *supra*.

{¶69}   R.C. 3953.32, "Closing or settlement protection" provides in pertinent part:

(B)   The closing or settlement protection offered pursuant to this section shall indemnify any lender, borrower, seller, and applicant that has requested the protection, both individually and collectively, against the loss of settlement funds[10] resulting from any of the following acts of the title insurance company's named title insurance agent or anyone acting on the agent's behalf:

(1)   Theft, misappropriation, fraud, or any other failure to properly disburse settlement, closing, or escrow funds;

*(2)    Failure to comply with any applicable written closing instructions, when agreed to by the title insurance agent.*

(C)   The issuance of closing or settlement protection by a title insurance company pursuant to division (A) of this section is part of the business of title insurance for purposes of Chapter 3953. of the Revised Code.

---

[10] The term "settlement funds," is also known as closing funds or escrow funds. Thus, those funds generally consist of funds to be disbursed upon the occurrence of the stated contingencies.

(D)   Except as provided in division (A) of this section, a title insurance company shall not offer or issue any coverage purporting to indemnify against a person's improper acts or omissions in connection with escrow, settlement, or closing services.

(E)   The superintendent of insurance may adopt rules in accordance with Chapter 119. of the Revised Code as the superintendent considers necessary to carry out the purposes of this section, including, but not limited to, rules that detail the specific language that must be included in the written document offering closing or settlement protection as provided for in division (A) of this section.

(Emphasis added.)

**{¶70}** Johnson also received the requisite notice of availability of CP Coverage from US Title.   The notice explains:

A title insurance policy does not cover losses due to the mishandling of funds or documents. *However, Closing Protection Coverage, as outlined below, does provide such protection.*   * * * The Closing Protection Coverage indemnifies you against the loss of settlement funds resulting from any of the following acts of the Licensed Agent, *subject to certain conditions and exclusions specified in the Closing Protection Coverage Form*:

(1)   Theft, misappropriation, fraud, or any other failure to properly disburse settlement, closing or escrow funds; and

(2)   Failure to comply with any applicable written closing instructions, when agreed to by the Licensed Agent.

(Emphasis added.)

**{¶71}**   The CP Coverage provides, in part:

When title insurance is specified in connection with closing of the above-described real estate transaction (the Closing) in which Closing you are the Covered Party hereunder with an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, Chicago Title Insurance Company (the  Company ), *subject to the Conditions and Exclusions set forth below,* hereby agrees to reimburse you

for actual loss incurred by you in connection with the Closing, when such Closing is conducted by the above named Licensed Agent (an agent licensed and authorized to issue title insurance in the State of Ohio for the Company) and where such loss arises out of:

1.    Theft, misappropriation, fraud *or any other failure* of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to properly handle and disburse your funds *or documents* in connection with such Closing; or

2. Failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to comply with any applicable written closing instructions, when agreed to by the Licensed Agent, to the extent   that they relate to:   (a) the status of the title to said interest in land or the marketability thereof as insured *or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursements of funds necessary to establish such status of title or lien; or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain such other document affects the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land*, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document.

Conditions and Exclusions:

    A.   The Company will not be liable to you for loss arising out of: * * *

    2.    Mechanics' and materialmens' liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy.

(Emphasis added.)

**{¶72}** In the affidavit in support of appellees' motions for summary judgment, Waiwood, an expert in the real estate title insurance industry, averred that the CP Coverage provides no coverage to Johnson due to the cited lien exclusion language. According to Waiwood, the CP Coverage only covers liens to the extent that protections

are contained in a title insurance binder, commitment or policy. The title insurance policies in this case specifically exclude lien coverage.[11]

**{¶73}** We agree that the plain language of the CP Coverage excludes coverage for the liens created by Johnson. However, Johnson's entitlement to have liens excluded pursuant to the Closing Instructions, the only written closing instructions provided to US Title, is a question of fact to be determined upon remand.

**{¶74}** The CP Coverage also covers an agent's failure to comply with closing instructions that results in a loss of priority of the mortgage. Here, the parties agree that the signing of the Loan Agreement by the Contractor would have protected the priority of the Mortgage. There is a genuine issue of material fact as to whether appellees are liable under the CP Coverage and what damages, if any, Johnson may establish as a result. "Under the plain language of the CP [Coverage], the only relevant inquiry in this case is whether * * * [the] issuing agent failed to comply with * * * relevant written closing instructions." *FDIC v. First Am. Title Ins. Co.*, E.D.Mich. No. 14-CV-13624, 2015 US Dist. LEXIS 10669, *12 (Jan. 30, 2015).

---

[11] Our reversal on the issue of US Title's compliance with the Closing Instructions, as well as Johnson's Closing Instructions, brings the question of the failure to provide title policies containing requested endorsements and exclusions into play, impacting the CP Coverage exclusion language.

### 3. Owner's Title Policy

**{¶75}** There is no dispute that the liens are excluded under the plain language of the Owner's Policy as issued. The resolution of this issue turns on establishing that Johnson provided verbal closing instructions to US Title directing that US Title issue an Owner's Policy with exclusion for mechanics liens, as the KeyBank Closing Instructions did not specify the exclusion for the Owner's Policy, only for the lender.

**{¶76}** In light of our determination that Johnson is a third-party beneficiary of the Closing Instructions, that there is a genuine issue of material fact as to the provision of verbal closing instructions by Johnson, and that the language of the CP Coverage addresses a loss of settlement funds due to an agent's failure to comply with "applicable written closing instructions," we reverse the trial court's finding and remand to the trial court for further consideration.

**C. Second through Fourth Assignments of Error — Fiduciary Duty, Negligence, Ordinary Care, and Bad Faith**

**{¶77}** We combine the remaining errors for review. As we have previously acknowledged:

> A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking. *Stock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988). A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. *Id.* In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom. *Id.*

*All Star Land Title Agency, Inc. v. Surewin Inv., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729, ¶ 36.

**{¶78}** Further:

> An escrow agent, despite fiduciary status, will not be liable when he or she acts in accordance with the escrow agreement or instructions. *Janca v. First Federal Sav. and Loan Assn. of Cleveland* (1985), 21 Ohio App.3d 211, 21 Ohio B. 225, 486 N.E.2d 1216 (1985), paragraph two of the syllabus.

*Waffen v. Summers,* 6th Dist. Ottawa No. OT-08-034, 2009-Ohio-2940, ¶ 34.

**{¶79}** Moving to the negligence claim, a case that arises from contract generally excludes an action in tort; however,

> Whether plaintiffs' claims are viewed as sounding in contract or tort, the "essential elements" of their case included, (1) breach of duty and (2) that the alleged damages were the "natural and necessary consequence of" or "proximately caused by" defendants' actions. "It is fundamental that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty and an injury proximately resulting therefrom." *Federal Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989). "Generally, a breach of contract action is pleaded by stating (1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." *American Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175, 593 N.E.2d 316 (1991). Damages must arise as a result of the breach and must "naturally and necessarily flow" from the breach of contract. *The Toledo Group v. Benton Industries*, 87 Ohio App.3d 798, 806, 623 N.E.2d 205 (1993); *Homes by Calkins, Inc. v. Fisher,* 92 Ohio App.3d 262, 267, 634 N.E.2d 1039 (1993); *Ziss Bros. Constr. Co., Inc. v. TransOhio Sav. Bank*, 8th Dist. Cuyahoga No. 58787, 1991 Ohio App. LEXIS 3134 (June 20, 1991).

*Nichols v. Chicago Title Ins. Co.*, 107 Ohio App.3d 684, 690-691, 669 N.E.2d 323 (8th Dist.1995). In *Nichols*, the plaintiffs were not successful on the negligence claim

because they failed to establish a duty of care, and their admission that their damages were

not Chicago Title's responsibility was "fatal to their claims."  *Id*.

> **{¶80}**    It is also true on the question of negligence in the insurance field that:

> [A]n action for negligence may be based upon an insurance agent's failure to procure insurance." *Gerace-Flick v. Westfield Natl. Ins. Co.*, 7th Dist. Columbiana No. 01 CO 45, 2002-Ohio-5222, citing *Minor v. Allstate Ins. Co.*, 111 Ohio App.3d 16, 21, 675 N.E.2d 550 (2d Dist.1996).    Whether an agent has negligently failed to procure insurance is ordinarily a question of fact.  *Id.*

*Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 2012-Ohio-3451, 977 N.E.2d

122, ¶ 18 (8th Dist.).

**{¶81}**    The issues of bad faith, negligence, and ordinary care will be addressed

upon remand, based on our findings herein. Therefore, we reverse the grant of summary

judgment on these issues.

## V.    CONCLUSION

**{¶82}**    We find that, viewed in a light most favorable to Johnson, there are

genuine issues of material fact in this case, and we reverse and remand for future

proceedings consistent with the law and this decision.

**{¶83}**    Judgment is reversed and remanded with instructions.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., DISSENTS WITH SEPARATE OPINION


KATHLEEN ANN KEOUGH, A.J., DISSENTING:

{¶84} Respectfully, I dissent.

{¶85} First, Johnson has not raised any assignment of error on appeal regarding the trial court's dismissal of Count III of his amended complaint, which seeks specific performance and injunctive relief against U.S. Title and Chicago Title.  Therefore, I would hold that Johnson has waived this claim.

{¶86} With respect to Chicago Title, I would hold that summary judgment was properly granted because Johnson failed to give Chicago Title notice of his claim.  The Owner's Policy mandates a specific notice procedure that requires that "any notice of claim * * * must be given to the Company at the address shown in Section 18 of the Conditions."  Section 18 provides that "any notice of claim * * * must be given to the Company at Chicago Title Insurance Company, Attn: Claims Depart, P.O. Box 45023, Jacksonville, Florida 32232-5023."

{¶87} In *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, the Ohio Supreme Court held that an insured does not have standing to

maintain an action against his insurance company for coverage of an alleged loss when he did not file a claim for the loss or give any notice to the insurer of the loss before filing the complaint. Despite Johnson's assertions otherwise, his emails to U.S. Title were not notice to Chicago Title, as required by the Owner's Policy. There is no genuine issue of material fact that the first notice Chicago Title had of the claims was when Johnson filed the amended complaint adding Chicago Title as a defendant. Indeed, Johnson admits that he gave no notice to Chicago Title prior to filing his amended complaint. Based on *Kincaid* and the notice provisions of the Policy, Johnson lacks standing to bring suit; his claims against Chicago Title fail; and summary judgment in favor of Chicago Title was properly granted.

{¶88} With respect to U.S. Title, Johnson asserts claims for breach of contract, negligence, breach of fiduciary duty, and bad faith (Counts I, IV, V, and VI respectively of the amended complaint). I would hold that the trial court properly granted summary judgment to U.S. Title on all of these claims.

{¶89} Johnson contends that the closing instructions were either an express or implied-in-fact contract between U.S. Title, himself, and KeyBank. Johnson claims that U.S. Title breached this alleged contract by failing to (1) obtain his contractor's signature on the construction loan agreement; (2) advise KeyBank that its choice of a closed-end mortgage was wrong; and (3) secure title insurance with exclusions for any liens filed against his property after the closing date of the agreement.

{¶90} But the evidence is clear that Johnson never submitted any written closing instructions to U.S. Title. Indeed, it is undisputed that the only written closing instructions were issued by KeyBank to U.S. Title. The evidence is also clear that the closing instructions issued by KeyBank did not contemplate losses incurred by Johnson. In fact, the instructions specifically stated that U.S. Title "will be made liable for losses incurred *by the Lender* as a result of the agent closing a loan with knowledge that errors were contained in any documents or instructions." (Emphasis added.) The instructions did not require coverage for the alleged losses Johnson now claims, and therefore, the trial court did not err in granting summary judgment on this claim.

{¶91} The majority concludes that although Johnson is not a party to the contract created by the closing instructions, he has standing to pursue his breach of contract claim as a third-party beneficiary of the closing instructions. The problem with this analysis is two-fold. First, Johnson never raised his third-party beneficiary claim in the trial court and thus has waived it for purposes of appeal.

{¶92} Moreover, even assuming Johnson is a third-party beneficiary of the closing instructions, his breach of contract claim still fails. Contrary to Johnson's assertions otherwise, there is simply no evidence in the record that KeyBank ever asked either U.S. Title or Chicago Title to insure over unreleased mechanic's liens to allow KeyBank to make further construction disbursements. Indeed, the plain language of the construction loan agreement makes clear KeyBank's intention to seek title endorsements before making disbursements. The agreement specifically provides that KeyBank could request title

endorsements and refuse to disburse further construction funds to Johnson if unreleased mechanic's liens on the property were discovered.

{¶93} Further, the record reflects that KeyBank informed Johnson that the transaction was closed correctly, and that KeyBank was not obligated to disburse more construction funds to Johnson in light of the mechanic's liens. Thus, despite Johnson's assertion that the mechanic's lien exclusion should not have been included in the title policy, it is apparent that KeyBank got exactly what it wanted at closing. Logically then, as a third-party beneficiary of the closing instructions, Johnson did too. Consequently, there was no breach of the closing instructions.

{¶94} Johnson also cannot demonstrate a breach of contract under the Owner's Policy. Under the exclusions from coverage, Johnson is not covered for liens that attached or were created after the date of the policy. Even Johnson's expert agreed that there is no coverage under the Owner's Policy for liens filed after the date of the policy. The policy is dated June 2, 2010; the mechanic's liens were recorded well after the date of the policy.

{¶95} Likewise, Johnson cannot prove breach of the closing protection coverage. As the trial court correctly recognized, Johnson's closing protection coverage excludes coverage for "matters created, suffered, assumed or agreed to by you and/or your agents or employees." The mechanic's liens arose when Johnson refused to pay his contractor. Thus, it is apparent that Johnson's claims arose out of a situation he created, and therefore, the "created, suffered, assumed or agreed to" exclusion applies.

**{¶96}** Johnson's negligence claim against U.S. Title also fails. It is well established that there is no cause of action for negligence where the alleged duty arises out of a contract. *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701. "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Nichols v. Chicago Title Ins. Co.*, 107 Ohio App.3d 684, 697, 669 N.E.2d 323 (8th Dist.1995).

**{¶97}** U.S. Title's duties to Johnson are defined by contract, not tort. The majority apparently agrees, finding that Johnson is a third-party beneficiary of the closing instructions. Nevertheless, the majority improperly holds that Johnson's negligence claim can proceed upon remand.

**{¶98}** I would find that Johnson's breach of fiduciary duty claim against U.S. Title also fails. Johnson is not a party to the Lender's Policy and cannot create a duty owed to him by U.S. Title based on contractual terms between U.S. Title and KeyBank. Furthermore, even assuming that U.S. Title, as escrow agent, was an agent of both KeyBank and Johnson, Johnson's breach of fiduciary claim still fails. It is undisputed that Johnson never provided any written instructions to U.S. Title. Although Johnson asserts that his attorney called U.S. Title and stated that Johnson wanted his coverage to be "no less comprehensive than that of KeyBank," in light of KeyBank's representation that the transaction closed appropriately, there is no issue of fact that U.S. Title followed

KeyBank's closing instructions. Thus, Johnson cannot demonstrate that U.S. Title breached its fiduciary duty to him in carrying out KeyBank's written closing instructions.

{¶99} Finally, I would find that Johnson's bad faith claim against U.S. Title fails. Ohio law is clear that a purported breach of a covenant of good faith and fair dealing is not an independent tort claim upon which liability can attach. Good faith is part of a contract claim and does not stand alone. *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610 (8th Dist.). Nor is U.S. Title an insurer such that an implied covenant of good faith and fair dealing should be attributed to its relationship with Johnson. *See id.* at ¶ 57. Accordingly, the trial court properly granted summary judgment on Johnson's bad faith claim. By finding Johnson to be a third-party beneficiary of the closing instructions, the majority implicitly finds that his claim arises in contract. Accordingly, it errs in holding that his bad faith claim against the defendants can proceed upon remand.

{¶100} Because there are no genuine issues of material fact regarding any of Johnson's claims, I would affirm the trial court's ruling granting summary judgment to U.S. Title and Chicago Title.